UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
G & G CLOSED CIRCUIT EVENTS, LLC,   Case No.: 21-cv-07351-DLC

        Plaintiff,   PLAINTIFF'S OPPOSITION TO
               DEFENDANTS' MOTION FOR
   - against -       SUMMARY JUDGMENT

ASHLEIGH BERTOLINI, et al.,

        Defendants.
-------------------------------------------------------------X

   **COMES NOW** the Plaintiff, G & G Closed Circuit Events, LLC, by its undersigned counsel, and hereby submits this Opposition to Defendants Ashleigh Bertolini, individually and d/b/a PARQ, and/or GLO 718 Corp., an unknown business entity d/b/a PARQ's (hereinafter "Defendants") Motion for Summary Judgment (Dkt. Nos. 39-43). For the reasons set forth herein and the supporting documentation submitted herewith, plaintiff respectfully requests that Defendants' Motion for Summary Judgment be denied.

///

///

///

///

///

///

///

///

///

///

///

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES                                                              ii

INTRODUCTION AND RELEVANT FACTUAL HISTORY                          2

LEGAL STANDARD                                                                    2

ARGUMENT                                                                          3

I.      DEFENDANTS DO NOT SATISFY THEIR INITIAL BURDEN AND, IN ANY
        EVENT, THE PROGRAM ORIGINIATED VIA SATELLITE TRANSMISSION
        SUCH THAT A THRESHOLD REQUIREMENT OF LIABILITY UNDER 47
        U.S.C. § 605 IS SATISFIED...................................................................................3

II.     DEFENDANTS OVERSIMPLY THE APPLICATION OF 47 U.S.C. § 553…............8

III.    INTERNET VIOLATIONS *PER SE* ARE COVERED UNDER THE PIRACY
        STATUTES........................................................................................................10

CONCLUSION........................................................................................................11

## TABLE OF AUTHORITES

PAGE(S)

**CASES**

*Adickes v. S. H. Kress & Co.,*
398 U.S. 144 (1970)                                                              4

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)                                                            2-3

*Bank of Am., Nat. Ass'n v. Kamico, Inc.,*
2012 WL 1449185 (S.D.N.Y. Apr. 24, 2012)                                       7-8

*Celotex Corporation v. Catrett,*
477 U.S. 317 (1986)                                                            2-4

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984)                                                              9

*Export-Import Bank of U.S. v Asia Pulp & Paper Co., Ltd.,*
2008 WL 465169 (S.D.N.Y. Feb. 6, 2008)                                           6

*Folio Impressions, Inc. v. Byer Cal.,*
937 F.2d 759 (2d Cir. 1991)                                                      7

*G & G Closed Circuit Events, LLC v. Alexander,*
2020 WL 1904628 (D. Ariz. Apr. 17, 2020)                                        11

*G & G Closed Cir. Events, LLC v. California Ctr. for the Arts, Escondido, Found.,*
2022 WL 598059 (S.D. Cal. Feb. 28, 2022)                                        11

*G & G Closed Circuit Events, LLC v. Infante,*
2022 WL 411847 (E.D. Cal. Feb. 10, 2022)                                        11

*G & G Closed Circuit Events, LLC v. Liu,*
45 F. 4th 1113 (9th Cir. 2022)                                                   9

*Harrison-Hoge Industries, Inc. v. Panther Martin S.R.L.,*
2008 WL 905892 (E.D.N.Y. Mar. 31, 2008)                                          7

*In re DoubleClick Inc. Priv. Litig.,*
154 F. Supp. 2d 497 (S.D.N.Y. 2001)                                             10

*International Cablevision, Inc. v. Sykes,*
75 F.3d 123 (2d Cir. 1996)                                                     3, 5

*J & J Sports Productions, Inc. v. Mari,*
2012 WL 1004842 (E.D.N.Y. Mar. 23, 2012)                                       4-5

*J & J Sports Productions, Inc. v. Patel,*
364 F. Supp. 3d 1368 (S.D. Ga. 2018)                                                10

*Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.,*
545 U.S. 967 (2005)                                                                  8

*New York State Telecommunications Ass'n, Inc. v. James,*
544 F. Supp. 3d 269 (E.D.N.Y. 2021)                                                  9

*Turner Network Sales, Inc. v. DISH Network L.L.C.,*
413 F. Supp. 3d 329 (S.D.N.Y. 2019)                                                  7

*United States v. Napier,*
787 F.3d 333 (6th Cir. 2015)                                                        10

*U.S. Telecom Ass'n v. F.C.C.,*
825 F.3d 674 (D.C. Cir. 2016)                                                      8-9

## **STATUTES AND RULES**

United States Code

47 U.S.C. § 605                                                              2-5, 11

47 U.S.C. § 522                                                                9-10

47 U.S.C. § 553                                                             2, 8, 10

Federal Rule of Civil Procedure 56                                                2

Federal Rule of Evidence 601                                                      7

## INTRODUCTION AND RELEVANT FACTUAL HISTORY

This is a commercial piracy case arising out of the alleged unlawful interception, receipt, and/or publication of Plaintiff G & G Closed Circuit Events, LLC (hereinafter "Plaintiff") *Program*, the *Saul "Canelo" Alvarez v. Daniel Jacobs WBA/WBC/IBF Middleweight Championship Fight Program,* telecast nationwide beginning on Saturday, May 4, 2019 and continuing into the morning of May 5, 2019 (hereinafter the "Program" or the "May 4-5, 2019 Program"). *Gagliardi Aff.* ¶ 3. Plaintiff alleges that, without its authorization, Defendants unlawfully broadcast the *Program* at their commercial establishment PARQ, operating at 4001 E. Tremont Avenue, Bronx, NY 10465.

There is no dispute that the Program was broadcast at PARQ, that the *Program* was not obtained from Plaintiff, or that a commercial licensing fee was not paid to Plaintiff. *Def Resp. RFA* Nos. 1, 3 (submitted as Hunter Decl., Ex. 3); *Gagliardi Aff.* ¶¶ 4, 8. Rather, Defendants contend that, for reasons unrelated to the unauthorized broadcast of the *Program* itself, they cannot be liable. Specifically, Defendants argue that Plaintiff cannot satisfy a threshold requirement for liability under the piracy statutes at issue herein, 47 U.S.C. § 605 and 47 U.S.C. § 553. As discussed below, Defendants' arguments fail both procedurally and substantively.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to produce specific facts upon which a reasonable jury could find that there is a genuine issue of material fact for

trial. *See Anderson*, 477 U.S. at 248. In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256. While Plaintiff has the ultimate burden on its claims, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation omitted).

## **ARGUMENT**

I.      DEFENDANTS DO NOT SATISFY THEIR INITIAL BURDEN AND, IN ANY EVENT, THE PROGRAM ORIGINIATED VIA SATELLITE TRANSMISSION SUCH THAT A THRESHOLD REQUIREMENT OF LIABILITY UNDER 47 U.S.C. § 605 IS SATISFIED.

Defendants argue generally that broadcasts over the "internet" do not fall within the ambit of the piracy statutes. *See Def. Memo.* at 3-4. (Dkt. No. 40). Whether internet violations *per se* are covered by the piracy statutes is somewhat of an open question, though there is support that they do.1 However, for purposes of this case, that question is academic. The broadcast originated via satellite such that, under controlling Second Circuit law, the requirement of a 47 U.S.C. § 605 violation has been satisfied.

Pursuant to the Second Circuit's opinion in *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996) (*"Sykes II"*), 47 U.S.C. § 605 covers satellite violations and certain cable violations. To fall within the ambit of § 605 in this Circuit, all that is necessary is that some part of the transmission occurred by satellite. *See e.g. J & J Sports Productions, Inc.*

---

1 Plaintiff addresses this further in Argument Section III below.

*v. Mari*, 2012 WL 1004842, at *3 (E.D.N.Y. Mar. 23, 2012) (granting summary judgment under section 605). Defendants acknowledge this. *Def. Memo.* at 5.

Through a series of unsupported and uncited conclusions, Defendants contend that Plaintiff has no evidence to satisfy this threshold requirement. *See Id.* at 5. Although Defendants do not offer *any* citation or support for their position in the Memorandum, the ultimate basis for Defendants' conclusion appears to be the testimony of defense counsel Rob Rickner. *Compare Rickner Decl.*, ¶ 3 (Dkt. No. 42), *with Def. Memo.* at 5. For the reasons noted in Plaintiff's currently filed Objections and Response to Defendants' Rule 56.1 Statement of Facts, this testimony is inadmissible. In light of this threshold failure, Defendants' arguments do not even get through the door. It does not matter that Plaintiff has the ultimate burden of persuasion. The moving party always has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation omitted); *see Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970) ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.") (quotation omitted). If there is no admissible evidence presented, Defendants cannot satisfy this initial burden.

More importantly, and assuming the Court accepts Defendants' position, Defendants misconstrue Plaintiff's disclosures. As noted in Defendants' own exhibit, Plaintiff identified Nicolas Gagliardi, President, G&G Closed Circuit Events LLC," as a witness. (Dkt. No. 42-2 at 2). Mr. Gagliardi testifies that the signal originated as a satellite transmission. *Gagliardi Aff.* ¶

13. As such, the violation falls within the ambit of 47 U.S.C. § 605. *See Sykes*, 75 F.3d at 133; *Mari*, 2012 WL 1004842 at *3. 2

> Paragraph 6.a of both the MSA between Plaintiff and DAZN provides:
>
> Promoter [DAZN] shall deliver either, as Promoter shall elect in its discretion, (i) the encrypted transmission of the video and audio signal of its telecast of the Events to a domestic satellite or other delivery point from which the signal is capable of being received by Strategic, DSS and/or VUBIQUITY, for redistribution to Licensee's designated outlets or (ii) by fiber optic cable to a delivery point at which the signal is capable of being received by DSS and VUBIQUITY, for redistribution to Licensee's designated outlets.

MSA, § 6.a (submitted, *inter alia,* as Ex. 1 to the Gagliardi Affidavit). For purposes of the May 4-5, 2019 Program, the Program originated via satellite uplink through Strategic. *Gagliardi Aff.* ¶ 14. Strategic had production trucks on-site where the event took place (i.e., Las Vegas, Nevada), and Strategic transmitted the live feed from the venue to satellites. *Id.*

Defendants offer testimony with respect to how the *Program* was ultimately received at PARQ, *see Colon Decl.* (Dkt. No. 41), but even assuming *arguendo* this testimony is admissible3, it is irrelevant. The signal originated as a satellite signal, and that is sufficient. At a bare minimum, the testimony of Mr. Gagliardi and the content of the MSA creates a genuine issue of fact as to this issue.

To the extent Defendants may challenge Mr. Gagliardi's ability to present this testimony, Mr. Gagliardi testifies, "I am the President of Plaintiff, G & G CLOSED CIRCUIT EVENTS, LLC, and as such I am fully familiar with the acts, circumstances, and proceedings

---

2 While the Complaint is not evidence on summary judgment, and the specific paragraph in question was not admitted by Defendants in their Answer, that the signal originated as a satellite transmission was even alleged in the Complaint. *See Cplt.* ¶ 24. (Dkt. No. 1). It is not as if Plaintiff has been hiding the ball.

3 Plaintiff has objected to Mr. Colon's testimony. *See Objections* (filed concurrently); *Resp. to Def. SOF* ¶¶ 1-6.

heretofore had herein." *Gagliardi Aff.* ¶ 1. Mr. Gagliardi adds, "I have personal knowledge of

each and every fact stated herein and could competently testify thereto if called as a witness."

*Id.* As to satellite transmission specifically, Mr. Gagliardi first notes that all programs, including

the *Program* herein, "originate via satellite uplink and are subsequently re-transmitted to cable

systems and satellite systems via satellite signal." *Id.* ¶ 13. Mr. Gagliardi continues:

> 14.    As noted above, with respect to the satellite nature of the telecast, the
> Program originated via satellite uplink. In this case, as provided in the MSA
> between G & G and DAZN, the Program originated via satellite uplink through
> Strategic. Strategic had production trucks on-site where the event took place (Las
> Vegas, Nevada), and Strategic transmitted the live feed from the venue to
> satellites.
>
> 15.    I am personally aware of the methods of transmission of all events for
> which G & G contracts, including the Program at issue herein. I have been
> President of G & G since March 1, 2013; in this position, I am responsible for
> ensuring G & G's profitability, and, therefore, must protect its licensed
> programming from illegal interception, publication, and receipt. I could not
> properly function in this role without having a complete understanding of
> precisely where and how the programming originates, and how it is legally, and
> illegally, transmitted and received.
>
> 16.    I also obtain this information, at least in part, from the negotiations I have
> with promoters – in this instance, DAZN - when crafting the MSAs at issue. For
> example, the MSA for the May 4-5, 2019 Program contains a specific provision
> (MSA, § 6.a) which identifies the possible original methods of signal origination.
> As noted above, for this specific Program, the Program originated via satellite
> uplink through Strategic, as expressly provided in MSA, § 6.a.
>
> 17.    On the nights of events, I am kept fully apprised of all issues related to the
> broadcasts, including any issues related to the original transmission from the
> event site, and whether there may have been any technological issues that
> necessitated a modification of the method of transmission. There were no
> modifications with respect to the May 4-5, 2019 Program; the May 4-5, 2019
> Program originated via satellite uplink through Strategic as planned.

*Id.* ¶¶ 15-17.

As President of the company, it is well within Mr. Gagliardi's personal knowledge and

competence to testify as to the operations of the company. *Export-Import Bank of U.S. v Asia*

*Pulp & Paper Co., Ltd.*, 2008 WL 465169, at *1, n. 4 (S.D.N.Y. Feb. 6, 2008) ("We are of the opinion that, ordinarily, officers would have personal knowledge of the acts of their corporations."); *Harrison-Hoge Industries, Inc. v. Panther Martin S.R.L.*, 2008 WL 905892, at *28 (E.D.N.Y. Mar. 31, 2008). Mr. Gagliardi also testifies that he was "fully familiar with the acts, circumstances, and proceedings heretofore had herein." *Gagliardi Aff.* ¶ 2. That is sufficient. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."). Indeed, even though there is no obligation to do so, Mr. Gagliardi also explains how he has come to understand the nature of the transmissions. *See Gagliardi Aff.* ¶¶ 12-18; *Bank of Am., Nat. Ass'n v. Kamico, Inc.*, 2012 WL 1449185, at *5 (S.D.N.Y. Apr. 24, 2012) ("[A]n affiant is under no obligation to specify the source of his personal knowledge."). Understanding the method of transmission of the broadcast is a basic component of G & G's operation. As Mr. Gagliardi testifies, as President of G&G, he could not "properly function in this role without having a complete understanding of precisely where and how the programming originates, and how it is legally, and illegally, transmitted and received." *Gagliardi Aff.* ¶ 15. This is further confirmed by the fact that method of transmission is expressly addressed in the MSAs signed and introduced by Mr. Gagliardi. MSA, § 6.a; *see Turner Network Sales, Inc. v. DISH Network L.L.C.*, 413 F. Supp. 3d 329, 336 (S.D.N.Y. 2019) (senior vice president and negotiator of contract competent to testify as to meaning of contract provision); *Gagliardi Aff.* ¶ 5 (introducing MSA); *Id.* (Ex. 1).

The test for admissibility of an affidavit is whether a "reasonable trier of fact could believe the witness had personal knowledge." *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 764 (2d Cir. 1991). In *Folio*, the witness:

> [E]xplained that she believed the background of Pattern # 1365 was a public domain document in her studio's possession. She had significant responsibilities

> and control at Bruckert Studio, including supervising the designers and
> overseeing their work. A trier of fact could reasonably have found from this
> evidence that she had personal knowledge of the source of the background of
> Pattern # 1365. The fact that Ms. Bruckert stated she "believed" the document
> was one in her studio's possession rather than that she "knew" so is not a basis for
> excluding her testimony, so long as she testified, as here, from general
> observation and knowledge, and not upon conjecture or hearsay.

*Id.* at 764. Mr. Gagliardi does not testify upon conjecture or hearsay, but based on his

observation, knowledge, and experience as President of G & G. Although the reasonableness of

the testimony may be a question of fact, *see Kamico,* 2012 WL 1449185 at *5, that issue is not

before the Court.

II.      DEFENDANTS OVERSIMPLY THE APPLICATION OF 47 U.S.C. § 553.

In view of the satellite nature of the transmission, it is unnecessary to determine whether

Defendants actions may also constitute a violation of 47 U.S.C. § 553. Nonetheless, it bears

noting that Defendants' analysis is an oversimplification, such that Defendants have not satisfied

their initial burden. Defendants rely on *Nat'l Cable & Telecommunications Ass'n v. Brand X

Internet Servs.*, 545 U.S. 967 (2005), to support that 47 U.S.C. § 553 cannot apply. *See Def.

Memo* at 3-4. (Dkt. No. 40). While *Nat'l. Cable* remains valid law, Defendants fail to account

for both subsequent changes to the Federal Communications Commission ("FCC") determination

in question, and the particular issues being addressed.

The portion of *National Cable* cited by Defendants does not address piracy or 47 U.S.C.

§ 553; rather, it says, "[c]able companies in the broadband service business offer consumers an

information service … it does not inexorably follow as a matter of ordinary language that they

also offer consumers the high speed data transmission (telecommunications) that is an input used

to provide this service." *Nat'l Cable,* 545 U.S. at 989. The Supreme Court ultimately concluded

that the FCC's classification of cable modem services as a purely information service that is not

subject to common carrier regulation was reasonable. *Id.* at 1000-01. In 2000, the FCC had classified broadband cable as an "information service." *See Nat'l Cable*, 545 U.S. at 977-978, 996 (discussing classification). Through a *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), review, the *Nat'l Cable* Court upheld this classification. In 2015, however, the FCC re-classified broadband cable from solely an "information service" to a "telecommunications service." *U.S. Telecom Ass'n v. F.C.C.*, 825 F.3d 674, 695 (D.C. Cir. 2016), *cert. denied* 139 S. Ct. 453 (2018); 139 S. Ct. 454 (2018), 139 S. Ct. 455 (2018), 139 S. Ct. 474 (2018)(approving the FCC's 2015 Open Internet Order that "reclassified both fixed and mobile broadband Internet access service as telecommunications services."). In 2018, however, the FCC reversed course again, and reverted to the original Title I classification. *See Mozilla Corp. v. F.C.C.*, 940 F.3d 1 (D.C. Cir. 2019) (discussing re-classification).

In *G & G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1116 (9th Cir. 2022), a case on which Defendants rely, *See Def. Mot.* at 5, the Ninth Circuit discussed *Nat'l Cable* at length, but not for the proposition that it supported a claim that internet received via cable is not a "cable service"; rather, *Liu* court cited *Nat'l Cable* for the proposition that: "Both the Supreme Court and the Ninth Circuit have acknowledged that transmissions over the Internet involve myriad technologies that may include both cable and satellite components." *Id.* at 1116. Next, *Nat'l Cable* and subsequent case law addressed FCC classifications *vis-à-vis* Titles I and II of the Cable Act. *See New York State Telecommunications Ass'n, Inc. v. James*, 544 F. Supp. 3d 269, 279 (E.D.N.Y. 2021), appeal withdrawn, No. 21-1603, 2021 WL 4472666 (2d Cir. Aug. 25, 2021) (discussing history*)*. Title V, which is implicated herein, contains its own set of definitions. *See* 47 U.S.C. § 522(6) ("cable service"). While Defendants pay lip-service to this, they make no effort to explain their conclusions. *See Def. Memo.* at 4. In *J & J Sports*

*Productions, Inc. v. Patel,* 364 F. Supp. 3d 1368 (S.D. Ga. 2018), the district court reviewed the particular definitions of 47 U.S.C. § 522 and concluded that an "internet" violation could fall within the ambit of 47 U.S.C. § 553.

III.   INTERNET VIOLATIONS *PER SE* ARE COVERED UNDER THE PIRACY STATUTES.

Although also unnecessary in light of the satellite transmission herein, Defendants' overarching argument that internet violations *per se* are not covered by the piracy statutes is far from a settled question, and Defendants' authority does little to advance their opinion.

Defendants reliance on *United States v. Napier,* 787 F.3d 333, 346 (6th Cir. 2015), for the conclusions that "[t]he Internet, however, is not a 'radio' system" and "the Internet is an interstate system of wires," *Def. Memo.* at 5, is misplaced. the Sixth Circuit was addressing whether images sent via email fell within the ambit of "interstate commerce" so as to satisfy a requirement of the criminal statutes at issue. *See Napier,* 787 F.3d at 346. Specifically, "[t]he relevant inquiry is whether there is enough circumstantial evidence that these electronic communications were transmitted through interstate wires. Given the omnipresent nature of the Internet, this is not a difficult burden for the government to satisfy." This is a far cry from holding, as Defendants appear to believe, that, "[t]he Internet is an interstate system of wires." In fact, the *words* "radio" or "satellite" do not appear in *Napier.* It is difficult to believe the Sixth Circuit would make such a sweeping conclusion without so much as mentioning the issue.

*In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 508 (S.D.N.Y. 2001), the other case to which Defendants cite, was distinguishing between an internet service provider ("ISP") and access to the internet. *Id.* Notably, however, *In Re DoubleClick* did say, that, "[o]bviously, in a broad sense, the 'internet' is the relevant communications service." *Id.* at 508. *In re DoubleClick* then noted:

> The ECPA defines "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). In turn, "electronic communications" are defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, *radio,* electromagnetic, photoelectric, or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

*Id.* at 508, n. 20 (emphasis added). Plaintiff recognizes that this case does not involve the ECPA, but as this is the case on which Defendants base their argument, a definition that expressly includes "radio" is compelling.

More importantly, "the United States Supreme Court has recognized that there are numerous ways to transmit data over the Internet, such as by cable modem service using cable lines, digital subscriber lines using local telephone wires, terrestrial-based wireless networks, and satellite-based wireless networks." *G & G Closed Cir. Events, LLC v. Infante*, 2022 WL 411847, at *13 (E.D. Cal. Feb. 10, 2022) *citing Nat'l Cable*, 545 U.S. at 975. Indeed, cases have found liability for piracy under 47 U.S.C. § 605 based on "internet" violations. *E.g. G & G Closed Cir. Events, LLC v. California Ctr. for the Arts, Escondido, Found.,* 2022 WL 598059 (S.D. Cal. Feb. 28, 2022) (denying Defendants' motion for summary judgment and holding, "liability is not precluded if the signal was received via the internet."); *G & G Closed Circuit Events, LLC v. Alexander*, 2020 WL 1904628, at *4 (D. Ariz. Apr. 17, 2020).

## CONCLUSION

Defendants' Motion fails both procedurally and substantively as detailed herein. Based on the foregoing, therefore, Defendants' Motion for Summary Judgment should be denied.

WHEREFORE, Plaintiff respectfully requests that Honorable Court deny Defendants' Motion for Summary Judgment, and order such other relief as this Court deems just and proper.

Dated: December 21, 2022

Respectfully submitted,

S/ Robert B. Hunter
_____

LAW OFFICES OF M.L. ZAGER, P.C.
By: Robert B. Hunter
461 Broadway, PO Box 948
Monticello, NY 12701
(845) 794-3660

Attorneys for Plaintiff
G & G Closed Circuit Events, LLC