UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
G & G CLOSED CIRCUIT EVENTS, LLC,    Case No.: 21-cv-07351-DLC

                        Plaintiff,    PLAINTIFF'S RESPONSE TO RULE 56.1
                                                     STATEMENT OF MATERIAL FACTS

        - against -

ASHLEIGH BERTOLINI, et al.,

                        Defendants.

-------------------------------------------------------------X

        NOW COMES the Plaintiff, G & G Closed Circuit Events, LLC (hereinafter "Plaintiff") and hereby submits this Response to the Rule 56.1 Statement of Material Facts in Support of Defendants Ashleigh Bertolini, individually and d/b/a PARQ, and/or GLO 718 Corp., an unknown business entity d/b/a PARQ (hereinafter "Defendants") Motion for Summary Judgment Motion for Summary Judgment. (Dkt. No. 43).

### PLAINTIFF'S RESPONSES TO DEFENDANTS' FACTS.

    1.    Emmanuel Colon managed the bar PARQ, a defendant in this lawsuit. Declaration of Emmanuel Colon ("Colon Decl.") ¶1.

<u>Plaintiff's Response</u>: Objection, Competence. Mr. Colon begins his Declaration by stating, "I, Emmanuel Colon, manage the bar PARQ, a defendant in this lawsuit." *Colon Decl.* ¶ 1 (Dkt. No. 41). Mr. Colon's Declaration is dated December 2, 2022. *Colon Decl.* At no time does Mr. Colon testify that anything he says is based on personal knowledge or competence, or that he was even present at PARQ on the night in question. *See Id.* While Mr. Colon does purport to say how the *Program* came to be broadcast at PARQ on May 4, 2019, *Id.* ¶¶ 2-6, without first establishing the threshold basis for this testimony, this testimony fails for lack of competence. *See* Fed. R. Civ. P. 56(c)(4). In addition, as Mr. Colon only testifies to being the *current* manager of PARQ, *Colon Decl.* ¶ 1, competence cannot be reasonably interpreted from his

Declaration. Objection, Unsupported. Mr. Colon testifies, "I, Emmanuel Colon, manage the bar PARQ, a defendant in this lawsuit." *Colon Decl.* ¶ 1 (Dkt. No. 41). Fact No. 1 utilizes the past tense "managed" while Mr. Colon's Declaration utilizes the present tense, "manage." At best, Mr. Colon establishes that he managed PARQ on December 2, 2022. Without waiving the Objections, it is admitted that PARQ is a Defendant in this lawsuit, and that on December 2, 2022 Mr. Colon managed PARQ.

2.   On May 4, 2019, the Saul Alvarez v. Daniel Jacobs, WBA/WBC/IBF World Middleweight[] Championship boxing match (the "Program") was displayed in the bar PARQ via a Smart TV. Colon Decl. ¶2.

Plaintiff's Response: Objection, Competence. *See Resp.* No. 1, *supra.* Objection, immaterial. How the *Program* ultimately came to be broadcast at PARQ is not dispositive of Defendants' ultimate liability. Without waiving the Objections, admitted that the Program was displayed at PARQ.

3.   The Smart TV has Internet capability that supports direct streaming of movies and other programs. Colon Decl. ¶3.

Plaintiff's Response: Objection, Competence. *See Resp.* No. 1, *supra.* Objection, immaterial. *See Resp.* No. 2, *supra.*

4.   4. The Smart TV was connected to PARQ's Internet router. Colon Decl. ¶4.

Plaintiff's Response: Objection, Competence. *See Resp.* No. 1, *supra.* Objection, immaterial. *See Resp.* No. 2, *supra.*

5.   The Program was shown on the Smart TV via the application DAZN, an application that allows user to watch boxing matches. DAZN was accessible from the Smart TV, and that is how the Program was shown in the bar. Colon Decl. ¶5. Without waiving the Objections, admitted that the Program was displayed at PARQ.

2

Plaintiff's Response: Objection, Competence. *See Resp.* No. 1, *supra.* Objection, immaterial. *See Resp.* No. 2, *supra.* Objection, Compound.

6. At no time did the Smart TV use a cable service or a satellite dish to stream the Program. Colon Decl. ¶6.

Plaintiff's Response: Objection, Competence. *See Resp.* No. 1, *supra.* Objection, immaterial. *See Resp.* No. 2, *supra.*

7. Plaintiff sued Defendants for violating 47 U.S.C. § 605, alleging that: "[O]n Saturday, May 4, 2019 in violation of G & G Closed Circuit Events LLC's rights and federal law, Defendants intercepted and/or received the satellite communication of the Program at PARQ. Defendant also divulged and published said communication, or assisted in divulging and publishing said communication to patrons within PARQ." Declaration of Rob Rickner, Exhibit 1 (the "Complaint") at ¶30.

Plaintiff's Response: Admitted that Complaint ¶ 30 contains the above-reproduced allegation. Admitted that Plaintiff sued Defendants for violating 47 U.S.C. § 605. Denied to the extent this paragraph implies that the sole basis for the 47 U.S.C. § 605 claim is ¶ 30 of the Complaint.

8. Plaintiff also sued Defendants for violating 47 U.S.C. § 533, alleging that: "[O]n Saturday, May 4, 2019 in violation of G & G Closed Circuit Events LLC's rights and federal law, Defendants willfully intercepted and/or received the original communication of the Program at PARQ via a cable system." Complaint at ¶40.

Plaintiff's Response: Admitted that the above quoted language is a partial reproduction of Complaint ¶ 40; the full allegation states:

> Upon information and belief, and as an alternative to Count I, on Saturday, May 4, 2019 in violation of G & G Closed Circuit Events LLC's rights and federal law, Defendants willfully intercepted and/or received the original communication of the Program at PARQ via a cable system.

*Cplt.* ¶ 40. Admitted that Plaintiff sued Defendants for violating 47 U.S.C. § 553. Denied to the extent this paragraph implies that the sole basis for the 47 U.S.C. § 553 claim is ¶ 40 of the Complaint.

9.  Plaintiff has a license with DAZN that grants it the exclusive rights to market and resell DAZN's boxing matches to commercial establishments, with DAZN retaining the rights to sell the boxing matches to individuals. Complaint Exhibit A.

Plaintiff's Response: Objection, Best Evidence. Through this allegation, Defendants purport to explain what the MSA between G&G and DAZN provides. The document speaks for itself. Without waiving the Objection, it is admitted that Plaintiff had, *inter alia,* the exclusive commercial distribution licensing rights to the Program, *Gagliardi Aff.* ¶ 3, and that these rights are defined in the MSA. *See e.g.* MSA ¶ 1. It is further admitted that DAZN retained other rights, including residential rights. *E.g.* MSA ¶¶ 1-2. Defendants' statement, "with DAZN retaining the rights to sell the boxing matched to individuals" is an oversimplification that could imply an individual *anywhere.*

10.  Pursuant to the license, DAZN has the option of transmitting the boxing matches to Plaintiff either by satellite or fiber optic cable. Complaint Exhibit A at page 4, titled Delivery of Signal.

Plaintiff's Response: Objection, Best Evidence. Once again, Defendants provide their subjective interpretation of what a provision of the MSA says. Without waiving the Objection, it is admitted that MSA ¶ 6.a (Delivery of Signal) provides:

> Promoter [DAZN] shall deliver either, as Promoter shall elect in its discretion, (i) the encrypted transmission of the video and audio signal of its telecast of the Events to a domestic satellite or other delivery point from which the signal is capable of being received by Strategic, DSS and/or VUBIQUITY, for redistribution to Licensee's designated outlets or (ii) by fiber optic cable to a delivery point at which the signal is capable of being received by DSS and VUBIQUITY, for redistribution to Licensee's designated outlets.

4

MSA, § 6.a

11. Nothing in the Plaintiff's Federal Rule of Civil Procedure 26 initial disclosures or other discovery indicates that the Program was ever transmitted via satellite during the Program's journey from the arena to the Smart TV at PARQ. Plaintiff's Federal Rule of Civil Procedure 26 initial disclosures do not include a witness that has this information. Indeed, none of the documentation indicates whether DAZN even transmitted the Program to Defendants via satellite (or fiber optic cable) in the first place.       Plaintiff's Response: Objection, Unsupported. First, there is no actual citation to support these allegations. Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). To the extent Defendants may suggest that their vague allusions to Plaintiff's Initial Disclosures is sufficient, Fed. R. Civ. P. 56(c)(1)(A) requires citation to "*particular* parts of materials in the record[.]" *Id.* (emphasis added).

As best as Plaintiff can ascertain, the ultimate support for this allegation appears to be Paragraph 3 of the Declaration of Rob Rickner. *See Rickner Decl.* ¶ 3 (Dkt. No. 42). Paragraph 3 of Mr. Rickner's Declaration and Fact No. 9 are identical. Mr. Rickner's testimony in this regard is inadmissible. First, of course, Mr. Rickner's attempts to testify as to what the initial disclosures say or mean is hearsay. Fed. R. Evid. 801(c). Next, the Initial Disclosures themselves are the best evidence of their content. Fed. R. Evid. 1002; *see New York ex rel. Spitzer v. Saint Francis Hosp.,* 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000) (striking portions of affidavit in support of a motion for summary judgment that commented on contents of letters because "the letters themselves [were] the best evidence of their contents."); *Gaft v. Mitsubishi Motor Credit of America*, 2009 WL 3148764, *4 (E.D.N.Y. Sept. 29, 2009) (disregarding portions of affidavit

5

submitted in support of summary judgment motion describing the contents of a report as hearsay and under the best evidence rule, and disregarding portion of 56.1 statement based on such testimony). Mr. Rickner is also not competent to offer such testimony, as he cannot possibly have personal knowledge thereof. Fed. R. Civ. P. 56(c)(4). As noted in *Risco v. McHugh*, 868 F. Supp. 2d 75 (S.D.N.Y. 2012):

> In addition, unlike the usual attorney affirmations which merely attach copies of documents alleged to be relevant and admissible, and identifies those documents for the Court, Plaintiff's counsel submitted an affirmation which includes arguments and factual assertions ... The affirmation is patently improper in that he could not possibly have personal knowledge of the matters discussed[.]"

*Id.* at 88, n. 2 (internal citation omitted).

Objection, Compound.

Without waiving the foregoing Objections, Denied. Mr. Gagliardi is identified on Plaintiff's Initial Disclosures, (Dkt. No. 42-2 at 2), and Mr. Gagliardi offers this testimony. *Gagliardi Aff.* ¶¶ 12-18.

## II.   PLAINTIFF'S ADDITIONAL FACTS.

12.   A sports Program, *Saul Alvarez (a/k/a Canelo) v. Daniel Jacobs WBA/WBF/IBF Middleweight Championship Fight Program*, was telecast nationwide on May 4, 2019 (continuing into the morning of May 5, 2019) (hereinafter the "Program"). *Gagliardi Aff.* ¶ 3.

13.   This Program included the main event between Alvarez and Jacobs, as well as all undercard bouts, pre-fight introductions and related footage of the fighters, and color commentary encompassed in the television broadcast of the event. *Id.* ¶¶ 3, 8.

14.   Plaintiff was granted the exclusive commercial distribution rights to the Program as well as the nationwide anti-piracy enforcement rights with respect to the Program. *Id.* ¶ 3.

15.   The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite systems via satellite signal. *Id.* ¶ 13.

16. If a commercial establishment is authorized by Plaintiff to receive the Program, the establishment is provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's programming provider is notified to unscramble the reception of the Program for the establishment, depending upon the establishment's equipment and provider. *Id.* ¶ 13.

17. In this case, as provided in the MSA between G & G and DAZN, the Program originated via satellite uplink through Strategic. *Id.* ¶ 14, 16; MSA ¶ 6.a (attached to Gagliardi Affidavit as Exhibit 1).

18. Strategic had production trucks on-site where the event took place (Las Vegas, Nevada), and Strategic transmitted the live feed from the venue to satellites. *Gagliardi Aff.* ¶ 14.

19. At all times relevant hereto, Defendant GLO 718 Corp. was a business entity organized and existing under the laws of the State of New York. *Answer* ¶ 7 (Dkt. No. 12) (admitting, in part, corresponding allegation of Plaintiff's Complaint) (Dkt. No. 1)); *Hunter Decl.*, Ex. 5 (New York State Corporate Records),

20. At all times relevant hereto, Defendant GLO 718 Corp. was the owner and operator of the commercial establishment doing business as PARQ, operating at 4001 E Tremont Avenue, Bronx, NY 10465. *Answer* ¶ 8 (admitting corresponding allegation of Complaint); *Def. Resp. RFA* No. 27 (submitted at *Hunter Decl.,* Ex. 3).

21. At all times relevant hereto, Defendant Ashleigh Bertolini was identified as "Principal[s]" for GLO 718 Corp. on the New York State Liquor Authority License (License Serial No. 1309967) issued to GLO 718 Corp. for the commercial establishment located at 4001 E Tremont Avenue, Bronx, NY 10465. *Answer* ¶ 9 (admitting corresponding allegation of Complaint); *Hunter Decl.,* Ex. 6 (Liquor License Public Query); *See Def. Resp. RFA* Nos. 27, 29 (admitting that Bertolini was an owner and officer).

22. At all times relevant hereto, Defendant Ashleigh Bertolini was the sole individual identified on the On Premises Liquor License (License Serial No. 1309967) issued to GLO 718 Corp. for the commercial establishment operating at 4001 E Tremont Avenue, Bronx, NY 10465. *Answer* ¶ 11 (admitting corresponding allegation of Complaint); *Hunter Decl.,* Ex. 6.

23. At all times relevant hereto, Defendant Ashleigh Bertolini was a principal and owner of GLO 718 Corp. d/b/a PARQ. *Answer* ¶ 9; *Hunter Decl.,* Ex. 6; *See Def. Resp. RFA* Nos. 27, 29 (admitting that Bertolini was an owner and officer).

24. Plaintiff's Program was intercepted, received, published and/or exhibited at the commercial establishment PARQ. *Gagliardi Aff.* ¶¶ 3-4, 8; *Hunter Decl.,* Ex. 1 (Emery Piracy Aff.); *Id.,* Ex. 2 (Joseph Piracy Aff.).

25. Neither Defendants nor PARQ ordered the Program from Plaintiff or paid a commercial sublicense fee to Plaintiff. *Def Resp. RFA* Nos. 1, 3; *Gagliardi Aff.* ¶¶ 4, 8.

26. The commercial fee to broadcast the Program lawfully for an establishment the size of PARQ was $2,750. *Gagliardi Aff.* ¶ 9.

27. The Program was broadcast at PARQ on May 4, 2019. *Def. Resp. RFA* No. 13; *Hunter Decl.,* Ex. 1 (Emery Piracy Aff.); *Id.,* Ex. 2 (Joseph Piracy Aff.).

28. PARQ required a $20.00 cover charge on May 4, 2019. *Hunter Decl.,* Ex. 1 (Emery Piracy Aff.); *Def Resp. RFA* No. 18 (admitting cover charge but not addressing amount).

29. The capacity for PARQ was estimated at 150 patrons; *Hunter Decl.* Ex 1 (Emery Piracy Aff.).

30. At the time the Program was broadcast at PARQ there were three different head counts taken by the auditor indicating 60/60/63 patrons present in the establishment. *Hunter Decl.,* Ex. 1 (Emery Piracy Aff.).

8

31. Patrons of PARQ watched the Program within the PARQ business establishment on May 4, 2019. *Def. Resp RFA* No. 17.

32. The Program was broadcast while alcoholic and non-alcoholic beverages were sold to patrons. *Def. Amended Resp. RFA* No. 36 (submitted as Hunter Decl. Ex. 4) (admitting sale of alcoholic beverages); *Answer* ¶ 27 (admitting corresponding allegation of Complaint re: sale of alcoholic and non-alcoholic beverages).

33. The Program was broadcast on one television at PARQ. *Hunter Decl.* Ex. 1 (Emery Piracy Aff.)

34. Defendants advertised that the Program would be shown at PARQ in the public Facebook page for PARQ. *Hunter Decl.,* Ex. 7 (Facebook post).

35. On May 4, 2019, PARQ had a Directv account. *Def. Amended Resp. RFA* No. 20.


Dated: December 21, 2022

                                            Respectfully submitted,

                                            S/ Robert B. Hunter
                                            _____

                                            LAW OFFICES OF M.L. ZAGER, P.C.
                                            By: Robert B. Hunter
                                            461 Broadway, PO Box 948
                                            Monticello, NY 12701
                                            (845) 794-3660

                                            Attorneys for Plaintiff
                                            G & G Closed Circuit Events, LLC