```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :   21cv7351 (DLC)
G&G CLOSED CIRCUIT EVENTS LLC,         :
                                       :
                    Plaintiff,         :   OPINION AND ORDER
                                       :
              -v-                      :
                                       :
ASHLEIGH BERTOLINI, et al.,            :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X
```

APPEARANCES:

For the plaintiff:
M. L. Zager, P.C.
Robert B. Hunter
Joseph Loughlin
PO Box 948
461 Broadway
Monticello, NY 12701

For the defendants:
The Fried Firm
Shana Fried
231 Front St. Ste 206
Brooklyn, NY 11201

Rickner PLLC
Robert Howard Rickner
14 Wall Street
Suite 1603
New York, NY 10005

DENISE COTE, District Judge:

The defendants, who are a bar and its owner, displayed a boxing match to their patrons without paying a fee to G & G Closed Circuit Events LLC ("G&G"). G&G has brought suit under the federal anti-piracy statutes. Because G&G has failed to

offer admissible evidence that the program was ever transmitted to the defendants by satellite or cable, summary judgment is granted to the defendants.

## Background

The following facts are taken from the evidence submitted in connection with the defendants' summary judgment motion. The facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

G&G is a closed-circuit distributor of sports and entertainment programming. G&G has an exclusive license with Perform Investment Limited, which is known as DAZN, to sublicense DAZN events to commercial premises in the United States. This license is governed by the Master Services Agreement ("MSA"). In order for a commercial establishment to lawfully broadcast the events, it must pay a commercial sublicense fee to G&G. G&G also has the right to prosecute acts of piracy of the events.

Under the MSA, DAZN events are delivered to G&G as follows:

> [DAZN] shall deliver either, as [DAZN] shall elect in its discretion, (i) the encrypted transmission of the <u>video and audio signal of its telecast of the Events to a domestic satellite or other delivery point from which the signal is capable of being received by Strategic, DSS and/or VUBIQUITY</u>, for redistribution to [G&G's] designated outlets or (ii) by fiber optic cable to a delivery point at which the signal is capable of being received by DSS and VUBIQUITY, for redistribution to [G&G]'s outlets.

2

(Emphasis supplied.) G&G's transmissions of the events are encrypted. If a commercial establishment pays the commercial sublicense fee to G&G, it is permitted to bypass the encryption and access the broadcast.

While G&G is the exclusive licensee for commercial premises, G&G's license does not include residential locations. DAZN may license its events via digital online internet and other modes of transmission to residential locations.

One of the events covered by the MSA was the Saul Alvarez v. Daniel Jacobs, WBA/WBC/IBF World Middleweight Championship (the "Program"). The Program aired on May 4, 2019, and ended in the early morning of May 5.

Defendant GLO 718 Corp., which does business as PARQ, is a bar located in New York. Defendant Ashleigh Bertolini owns PARQ. On May 4, 2019, the Program was shown on televisions at PARQ, and PARQ charged its patrons a cover fee to watch the Program. PARQ did not order the Program from G&G or pay G&G a licensing fee for the Program. The defendants deny that they ordered the Program from DirecTV, Dish Network, or PARQ's local cable company.

G&G filed this action on September 1, 2021. G&G alleges that the defendants unlawfully intercepted and/or received the Program via satellite communications or a cable system in violation of the Communications Act of 1934, 47 U.S.C. § 605

("Communications Act" and "§ 605"), and the Cable Communications Policy Act of 1984, 47 U.S.C. § 553 ("Cable Act" and "§ 553"; together, "Anti-Piracy Statutes").

Discovery ended in April 2022. This case was reassigned to this Court on August 17. Following a conference on November 3, the defendants moved for summary judgment on December 2. The motion became fully submitted on January 13, 2023.

## Discussion

Summary judgment may only be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

"The movant bears the initial burden of showing that there is no genuine dispute as to a material fact." McKinney v. City of Middletown, 49 F.4th 730, 738 (2d Cir. 2022) (citation

4

omitted). When "the burden of proof at trial would fall on the nonmoving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Id. (citation omitted). "If the moving party carries its burden, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." Id. (citation omitted). "Unsupported allegations do not create a material issue of fact." Id. (citation omitted).

The defendants have moved for summary judgment on the ground that G&G does not have admissible evidence that the Program the defendants played for their patrons on May 4, 2019 was ever transmitted by satellite or cable. The defendants contend that they received the Program through the internet and displayed it to the patrons on their Smart TV.[1] While G&G brought suit for violations of the Communications Act and the Cable Act, in opposition to this motion it relies entirely on the Communications Act, specifically § 605.

Section 605(a) of the Communications Act prohibits "the unauthorized use or publication of wire or radio

---

[1] The plaintiff has challenged the admissibility of the defendants' evidence regarding their receipt of the Program via the internet. It is unnecessary to resolve the admissibility of this evidence since the plaintiff has failed to carry its own burden in opposing this motion.

communications." Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1007 (2d Cir. 1993) (Sykes I). In relevant part, the statute provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.[2]

47 U.S.C. § 605(a) (emphasis supplied).

> The term "radio communication" or "communication by radio" means the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission.

Id. § 153(40). The term "radio communication" includes satellite communications. Int'l Cablevision, Inc. v. Sykes, 75

---

[2] Section 605(a) consists of four sentences. The first sentence of § 605(a) is probably "directed at communications personnel." Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 131 n.4 (2d Cir. 1996) (Sykes II). Accordingly, it is omitted here.

F.3d 123, 133 (2d Cir. 1996) (Sykes II).  Section 605 covers unauthorized interception or receipt of transmissions that originated as radio or satellite transmissions, even if the transmission was later delivered through and intercepted or received over cable or other means.  Id.

The defendants' motion for summary judgment is granted.  The plaintiff has not presented admissible evidence that the Program displayed at PARQ was ever transmitted by satellite or any other means covered by § 605.  See G & G Closed Circuit Events, LLC v. Liu, 45 F.4th 1113, 1117 (9th Cir. 2022).

The president of G&G, Nicolas Gagliardi, has testified:

> [T]he Program originated via satellite uplink.  In this case, as provided in the MSA between G & G and DAZN, the Program originated via satellite uplink through Strategic.  Strategic had production trucks on-site where the event took place (Las Vegas, Nevada), and Strategic transmitted the live feed from the venue to satellites.

This statement does not explain how the president learned what he reports.  He does not testify that he attended the event and personally witnessed its recording and transmission via satellite.  He has attached no business records from G&G or any other company that describes this arrangement.  To the extent he learned of this through a conversation with someone from DAZN or Strategic who had personal knowledge, he has attached no declaration from that person.

7

In any event, in order to prevail on its claim, G&G must show that <u>all</u> transmissions of the event originated from Strategic and its satellite uplink, such that any broadcast of the Program would have necessarily been through receipt of a transmission originating from a satellite transmission. Gagliardi only testifies, however, that "the Program originated via satellite uplink through Strategic" and that "Strategic transmitted the live feed from the venue to satellites." G&G offers no evidence that Strategic's satellite transmission was the sole source of transmission to the licensee for residential locations, and any other source from which the defendants could have obtained the Program.

In sum, under § 605, the plaintiff must show that the transmission intercepted or received by the defendants originated or was transmitted at some point as a satellite transmission. The plaintiff has failed to present any admissible evidence to make such a showing.

## Conclusion

The defendants' December 2, 2022 motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:   New York, New York
         March 30, 2023

                                    _____
                                         DENISE COTE
                                    United States District Judge